UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NORBERT BASENGEZI KATINTIMA**<br>15 Joli Parc<br>Ngaliema, Kinshasa<br>Democratic Republic of the Congo<br><br>*Plaintiff,*<br><br>v.<br><br>**BRADLEY T. SMITH**<br>in his official capacity as<br>    Acting Director of the United States<br>    Department of the Treasury<br>    Office of Foreign Assets Control<br>1500 Pennsylvania Avenue, NW<br>Freedman's Bank Building<br>Washington, D.C. 20220<br><br>*Defendant,*<br><br>and<br><br>**THE UNITED STATES DEPARTMENT<br>OF THE TREASURY, OFFICE OF FOREIGN<br>ASSETS CONTROL**<br>1500 Pennsylvania Avenue, NW<br>Freedman's Bank Building<br>Washington, D.C. 20220<br><br>*Defendant.* | **COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF**<br><br>CIV. NO. _____<br><br>ECF |

Plaintiff Norbert Basengezi Katintima ("Katintima") brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Acting Director, Bradley T. Smith, and in support of this Complaint alleges the following:

## INTRODUCTION

1. On August 13, 2021, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") denied Katintima's petition seeking the rescission of his designation under Executive Order ("E.O.") 13413, as amended and his removal from the Specially Designated Nationals and Blocked Persons ("SDN") List. In doing so, OFAC and its Acting Director, Bradley T. Smith, ignored the evidence before it and acted inconsistent with the agency's own delisting procedures and announced policies. These errors violate the law and demand immediate reversal.

2. Katintima was formerly the Vice President to the National Independent Electoral Commission ("CENI") of the Democratic Republic of the Congo ("DRC"). In this role, Katintima was responsible for managing relations between CENI and the DRC's various political parties, as well as conducting civic education and supervising election-related trainings. It was partly due to his efforts that the DRC held a successful general election in 2018—one that led to the first peaceful, democratic transition in power in decades, "welcomed" by the United States government and international parties alike.

3. However, in response to false allegations by one of the losing parties in that election, and without any supporting evidence, OFAC imposed sanctions on Katintima and two other election officials at CENI for allegedly engaging in actions or policies that undermine democratic processes or institutions in the DRC. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Congolese Officials Responsible for Undermining DRC Elections (March 21, 2019). To support its action, OFAC relied on fantastical claims of misconduct originating from parties with an interest in undermining the legitimacy of the DRC's

electoral successes. OFAC, however, does not appear to have undertaken any independent assessment to verify whether these spurious allegations were true.

4. In response to his wrongful initial designation, Katintima used all available avenues to contest OFAC's sanctions—litigating the matter and seeking administrative reconsideration before the agency. In seeking delisting, Katintima submitted two bases for removal. First, Katintima asserted that there had been a change in circumstances negating the basis for the designation insofar as he had since resigned from his position at the CENI and could no longer be said to be in a position to engage in those activities of which he was alleged. Second, Katintima sought reconsideration of his designation that there was an insufficient factual basis for the designation and provided voluminous documentation showing that OFAC's allegations were factually incorrect and did not support the claims made by OFAC in the evidentiary memorandum. Both bases for delisting are consistent with OFAC's delisting procedures which allow designated persons to request reconsideration based on an insufficient basis for the designation, or to assert that the circumstances underlying the initial designation no longer exist.

5. OFAC's letter informing Katintima of the denial of his delisting petition, dismissed these bases in conclusory manner and without any hint of fair consideration. According to OFAC, Katintima "[did] not provide[] credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstance resulting in the designation no longer apply." OFAC's denial letter provides no indication as to the reasoned basis by which it rendered such conclusions, nor how it assessed the arguments and evidence provided by Katintima to be incredible. These failures violate the norm of reasoned agency decision-making.

6. Further, OFAC denied Katintima's delisting petition without providing the basis for its determination that Katintima continues to meet the criteria for designation under E.O.

3

13413, as amended. As part of Katintima's delisting petition, he sent multiple submissions to OFAC containing substantive arguments rebutting the basis for his initial designation and requesting that OFAC consider voluminous documents, including official documentation from the Government of the Democratic Republic of the Congo ("DRC"). Katintima, however, has received no indication that OFAC seriously considered Katintima's proferred bases for delisting or the supporting materials. Instead, OFAC's sole notice to Katintima of the administrative denial contains a single cursory sentence stating that the evidence in OFAC's possession continued to support the designation.

7. No fair consideration of Katintima's delisting petition and supplemental filings could support an argument that he continues to meet the criteria for designation under E.O. 13413, as amended, particularly given the change in circumstances that have occurred since initial designation. Specifically, Katintima is no longer an election official, nor otherwise a government official, in the DRC, and OFAC has no reason to believe that he will resume such a role in future. OFAC's denial letter, however, makes no effort to reason why—in light of the information contained in Katintima's filings—why the circumstances which led to Katintima's designation have not changed.

8. OFAC's action to deny Katintima's delisting petition is flawed and constitutes arbitrary and capricious agency action in clear violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Katintima asks nothing more than that this Court ensure OFAC plays by its own rules and fairly considers the arguments and evidence presented to it.

## JURISDICTION AND VENUE

9. This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* This Court

has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

10. This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and Fed. R. Civ. P. 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. 65.

11. Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. *See* 28 U.S.C. § 1391(b) and (e).

## THE PARTIES

12. Norbert Basengezi Katintima is and was at all times relevant to this complaint a citizen of the Democratic Republic of the Congo. Katintima currently resides at 15 Joli Parc Ngaliema, Kinshasa, DRC.

13. Katintima was formerly the Vice President of the CENI—the DRC's independent electoral commission charged with ensuring free and fair elections—a position that he held from November 2015 until June 2019. Prior to this role, Katintima was an elected member of the DRC Parliament and was the Second Vice President of the Independent Electoral Commission—the predecessor to CENI—where he helped register more than 25 million voters to take part in the first-ever democratic elections in the DRC. Katintima has spent much of his life advocating for, and facilitating, free and fair elections in the DRC.

14. Katintima is subject to sanctions pursuant to E.O. 13413, as amended, and his name is included on OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List").

15. OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C.

20220. OFAC is responsible for administering U.S. economic sanctions programs, including by designating persons pursuant to authorities contained in E.O. 13413, as amended, and regulating dealings with them under those authorities via 31 C.F.R. Parts 501 and 547, the "Reporting, Procedures, and Penalties Regulations," and the "Democratic Republic of the Congo Sanctions Regulations," respectively. OFAC was responsible for designating Katintima under E.O. 13413, as amended, and for denying Katintima's delisting petition.

16. Defendant Bradley T. Smith is the Acting Director of OFAC. The Director of OFAC is delegated all authorities provided to the Secretary of the Treasury under E.O. 13413, as amended. 31 C.F.R. § 547.802. Mr. Smith is sued in his official capacity.

## FACTUAL ALLEGATIONS

### A. OFAC's March 21, 2019 Designation of Katintima

17. On March 21, 2019, OFAC designated Katintima under E.O. 13413, as amended, for allegedly engaging in actions or policies that undermine democratic processes or institutions in the DRC. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Congolese Officials Responsible for Undermining DRC Elections (March 21, 2019). As a result of this designation, Katintima's name was added to OFAC's SDN List.

18. The legal consequence of Katintima's designation is that his property and interests in property within U.S. jurisdiction are blocked, and U.S. persons are prohibited from engaging in transactions or dealings with him. Moreover, U.S. or foreign persons that provide material assistance to Katintima—including through provision of financial services or any other goods or services—are subject to designation under E.O. 13413, as amended, and could thus themselves be subject to blocking sanctions. *See* E.O. 13413, § 1(a)(ii)(F) (Oct. 27, 2006).

### B. Disclosed Bases for Katintima's Designation Under E.O. 13413

19. The legal basis for Katintima's designation was OFAC's determination that he is responsible for or complicit in, or has engaged in, directly or indirectly, actions or policies that undermine democratic processes or institutions in the DRC. *See* Notice, U.S. Dep't of Treasury, Office of Foreign Assets Control, 84 FED. REG. 30804 (June 27, 2019).

20. OFAC issued a press release announcing Katintima's designation that contained allegations purportedly related to the basis for the designation. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Congolese Officials Responsible for Undermining DRC Elections (March 21, 2019). Specifically, OFAC alleged that Katintima "and other CENI officials under his direction, embezzled and misappropriated CENI operational funds, facilitating election delays." *Id*. According to OFAC, Katintima "oversaw CENI officials using several shell companies to embezzle CENI operational funds for their own personal and political gain," and Katintima "withdrew and provided at least $80,000 from CENI operational funds to his personally-owned hospital, which provided medical care to all CENI employees." *Id*. Moreover, OFAC alleged that Katintima "agreed to bribe [] investigators [from the Supreme Audit Institution] to conduct an inaccurate audit [of CENI's financial activities]" and "delivered bribes to Constitutional Court justices to uphold a decision by the CENI to delay DRC's 2016 elections." *Id*.

21. On April 15, 2020, OFAC disclosed a redacted version of the administrative record underlying his designation, including the redacted evidentiary memorandum that sets out the factual and legal basis for OFAC's determination that Katintima meets the criteria for designation under E.O. 13413, as amended. Exhibit A—OFAC Evidentiary Memorandum.

22. The unredacted portions of OFAC's evidentiary memorandum appear to indicate that Katintima was determined to meet the criteria for designation under E.O. 13413, as amended, on two separate bases: (1) Katintima allegedly misappropriated state assets from CENI and this contributed to election delays; and (2) Katintima bribed Constitutional Court justices to gain support for election delays. The disclosed version of the evidentiary memorandum redacts the basis for these findings, as well as OFAC's supporting evidence.

### C.    Katintima's Delisting Petition to OFAC

23. On November 9, 2020, Katintima filed a delisting petition to OFAC seeking the rescission of his designation under E.O. 13413, as amended, and the removal of his name from OFAC's SDN List.

24. This delisting petition was submitted consistent with OFAC's delisting procedures and put forth two distinct bases for delisting: (1) that OFAC should reconsider Katintima's designation as being factually insufficient to support his designation; and (2) by asserting that there had been a change in circumstances negating the basis for Katintima's designation—i.e., that Katintima no longer served as CENI's Vice President or in any other capacity in the DRC's government.

25. In support of these twin bases for removal, Katintima provided substantive information and supporting evidence. The supporting evidence included the decisions of the Constitutional Court and the applications for adjudication made by the CENI; CENI's contracts with Biopharm (a hospital formerly owned by Katintima) and the DRC's Ministry of Health's evaluation of Biopharm's health care provision; a statement by the CENI on OFAC's wrongful imposition of sanctions on Katintima; internal documents identifying the intensive deliberations over scheduling the DRC's 2018 general elections; CENI's reports on the 2018 general elections,

as presented to, and accepted by, the DRC's Parliament; and Katintima's resignation letter to the CENI and an affidavit attesting that Katintima does not hold a government position and does not intend to do so in the future. Katintima's delisting petition included more than 1,000 pages of documentary evidence in support of his proffered bases for delisting.

### D. OFAC's Denial of Katintima's Delisting Petition

26. On August 13, 2021, OFAC denied Katintima's delisting petition. In a letter to Katintima's counsel, OFAC stated that "[a]fter reviewing the evidence in the record regarding your client's designation as an SDN, including material you submitted, OFAC has determined that [Katintima] has not provided credible arguments or evidence establishing that an insufficient basis exists for the designation or that the circumstances resulting in the designation no longer apply." Exhibit B-OFAC Denial Letter.

27. OFAC's denial letter further stated that it "conducted a thorough review of its evidence and ha[d] confirmed that [] Katintima did in fact misappropriate state assets belonging to CENI and oversaw officials who embezzled CENI funds, which led to CENI postponing the 2016 presidential election due to a lack of funding and delays in voter registration . . ." Exhibit B-OFAC Denial Letter. The letter further stated that OFAC had confirmed that Katintima "bribed Constitutional Court justices which led to a breach in the Court's quorum provisions and the approval of CENI's case to delay the 2016 presidential election." Exhibit B-OFAC Denial Letter.

28. OFAC concluded its denial letter by stating that it had "found that [] Katintima still meets the original criteria for designation pursuant to [E.O. 13413] despite his assertion that he resigned from CENI and that [] Katintima failed to demonstrate that the circumstances resulting in his designation no longer apply." Exhibit B-OFAC Denial Letter.

29. OFAC provided no reasoning in support of these conclusory determinations nor did the agency identify or disclosure any evidence used to support its conclusions. OFAC further failed to provide the evidentiary memorandum underlying its denial decision.

### E. Harm Done to Katintima

30. Defendants' unlawful action continues the personal, professional, and financial devastation caused to Katintima from his designation by OFAC. By virtue of this designation, Katintima has been made the subject of an international boycott whereby persons all over the world—including in his home country of the DRC—are subject to sanctions by Defendants for engaging in any transactions or dealings with him. This has led to Katintima's personal, professional, and financial isolation, as parties refuse to transact or otherwise deal with him for fear of U.S. sanctions.

31. OFAC's denial of Katintima's delisting petition noted that Sofibanque and Equity Bank Congo have blocked Katintima's accounts, freezing $26,000 USD of his funds, because of OFAC's designation. The denial decision also further denies Katintima the ability to utilize banking facilities for the maintenance, receipt, or transfer of funds, even those banking facilities located in the DRC. By maintaining its sanctions against him, OFAC ensures Katintima's total financial isolation, as he is unable to access funds held by third parties in which he maintains an interest and is unable to open new bank accounts in which to deposit his funds.

32. OFAC's denial of Katintima's delisting petition also undermines Katintima's family ties, particularly with respect to his U.S. citizen grandchildren. Indeed, by virtue of OFAC's continued sanctions against him, Katintima is prohibited from engaging in any transactions with his U.S. citizen grandchildren, including by providing them gifts for birthdays or holidays or engaging in any other activities that OFAC may regard as a prohibited "service" (such as hosting

them for family gatherings, etc.). OFAC's denial action and its maintenance of sanctions against Katintima thus risks splitting Katintima's family, as he must isolate from his own grandchildren to insulate them (and himself) from U.S. sanctions, including civil and criminal liability.

33. These costs are fully acknowledged by Defendants who openly laud that their sanctions impose "professional, personal, and financial isolation" on targeted persons. Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, U.S. Government Sanctions Organizations and Individuals in Connection with an Iranian Defense Entity Linked to Iran's Previous Nuclear Weapons Effort (March 22, 2019). Indeed, Defendants regard their sanctions as "force multipliers," as "international financial institutions frequently implement [U.S.] sanctions voluntarily, even when they are under no legal obligation to do so," by blacklisting sanctioned persons from accessing their services. Examining Treasury's Role in Combating Terrorist Financing Five Years After 9/11, Hearing Before the Comm. on Banking, Housing, and Urban Affairs, 109th Congress, S. Hrg. 109-1073 (statement of Adam J. Szubin).

## LEGAL CLAIMS

### COUNT I

DEFENDANTS' DENIAL OF KATINTIMA'S DELISTING PETITION CONSTITUTES ARBTIRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

34. Katintima re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

35. Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A).

36. OFAC promulgates procedures by which parties subject to its sanctions can petition for reconsideration of their designation and delisting from the SDN List. 31 C.F.R. § 501.807. Pursuant to OFAC's delisting procedures, a designated person "may submit arguments or evidence that the person believes establishes that insufficient basis exists for the designation" or "propose remedial steps on the person's part . . . which the person believes would negate the basis for designation." 31 C.F.R. § 501.807(a). Designated persons may also argue that there has been a change in circumstances rendering inapplicable the reasons for the original designation. 31 C.F.R. § 501.807.

37. By denying Katintima's delisting petition—despite the considerable arguments and evidence presented to Defendants showing that there has been an insufficient basis for his designation under E.O. 13413, as amended, and, alternatively, that there has been a change in circumstances negating the basis for his designation—Defendants acted inconsistent with their own regulation and in violation of the Administrative Procedure Act.

38. Defendants' denial of Katintima's delisting petition based on conclusory statements failed to evidence reasoned decision-making and is thus arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA.

## COUNT II

DEFENDANTS' FAILURE TO PROVIDE ADEQUATE NOTICE OF THE REASONS FOR ITS DENIAL OF KATINTIMA'S DELISTING PETITION VIOLATES THE ADMINISTRATIVE PROCEDURE ACT

48. Katintima re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

49. Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

50. Pursuant to 5 U.S.C. § 555(e), prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with an agency proceeding. Such notice must be accompanied by a statement of the grounds for denial.

51. By denying Katintima's delisting petition without providing adequate notice of the grounds for its decision, Defendants violated the Administrative Procedure Act.

**RELIEF REQUESTED**

Wherefore, Katintima respectfully requests that this Court:

A. Issue an order vacating OFAC's denial of Katintima's delisting petition;

B. Order Defendants to rescind Katintima's designation under E.O. 13413;

C. Order Defendants to disclose the administrative record or any unclassified portions of such record to apprise Katintima as to the reasons for its denial of his delisting petition;

D. Order Defendants to produce unclassified summaries of classified or otherwise privileged information contained in the administrative record, which—together with the unclassified version of the administrative record—fully apprises Katintima as to the reasons for the denial of his delisting petition;

E. Order Defendants to provide alternative means by which Katintima may be given sufficient notice as to the reasons for the denial of his delisting petition in the event

      that OFAC is unable to disclose those reasons through declassification or unclassified summaries of classified or otherwise privileged information;

F.    Grant an award to Katintima of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, and any other applicable provision of law; and

G.    Any other and further relief as the Court may deem proper.

Dated: November 5, 2021

                                          Respectfully submitted,

                                          /s/ Erich C. Ferrari
Erich C. Ferrari, Esq.
Ferrari & Associates, P.C.
1455 Pennsylvania Avenue, NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

Attorney for Plaintiff
*Norbert Basengezi Katintima*